IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IRVING E. WALKER, TRUSTEE | * | |
| | * | |
| v. | * | Civil No. JFM-02-2768 |
| | * | |
| ELIZABETH G. WEESE, ET AL. | * | |
| | * | |
| | ***** | |

MEMORANDUM

Plaintiff Irving Walker, trustee of the estates of debtors Elizabeth Weese and Brian Weese, has filed a complaint in bankruptcy court to recover assets plaintiff alleges were never effectively transferred and remain part of the bankruptcy estate. Defendants Elizabeth Weese, Brian Weese, and Alexander Grass (Elizabeth Weese's father) have filed motions to have the proceeding withdrawn from the bankruptcy court on the ground they are entitled to a jury trial under the Seventh Amendment. For the reasons set forth below, I will deny defendants' motions and remand this case to the bankruptcy court for trial.

I.

On August 23, 2001, creditors filed an involuntary bankruptcy petition naming both of the Weeses under Chapter 7 of the Bankruptcy Code. Prior to this time, the Weeses allegedly transferred millions of dollars worth of assets into an offshore trust. After an appeal to this court regarding jurisdiction over joint bankruptcy petitions, the initial case against the Weeses was transformed into two separate actions against each of them individually. See Bank of America, N.A. v. Weese, 277 B.R. 241 (D. Md. 2002). Subsequently, the Weeses each filed a voluntary petition for bankruptcy under Chapter 11. (Def.'s Reply at 3.) The bankruptcy court converted

the involuntary cases under Chapter 7 to voluntary cases under Chapter 11 and determined those cases should be jointly administered, with the Weeses acting as debtors in possession. (Def.'s Mem. at 2.)

Several months later, the creditors moved to have the Weeses replaced in their capacity as debtors in possession. In April 2002, the Weeses were removed as debtors in possession and a trustee, Irving E. Walker, was appointed to oversee the debtors' estates. Acting as trustee, Walker filed a complaint against the Weeses and three other defendants.[1] The complaint requests various forms of declaratory and injunctive relief in order to recover assets plaintiff alleges the Weeses attempted to transfer to a trust in the Cook Islands ("the Trust") prior to the filing of the bankruptcy petitions. In Count I, plaintiff asks the court to declare that all of the Trust assets constitute property of the Weeses' bankruptcy estates. Count II requests an order directing four of the defendants to turn over the assets of the Trust. Alternatively, Counts III through V ask the court to set aside and avoid Elizabeth Weese's resignation as "Protector" of the Trust and require her to turn over, in her restored capacity as Protector, the assets of the Trust. Finally, Counts VI and VII ask the court to declare the notice removing Alexander Grass as co-trustee of the estate ineffective and require him to turn over the assets of the Trust in his capacity as trustee. (Compl. ¶¶ 48-78.)

The debtors, Elizabeth G. Weese and Brian D. Weese, filed a joint motion to have the reference to the bankruptcy court withdrawn so they could be given a jury trial in the district

---

[1] One of the defendants, the Cook Islands Trust, Ltd. (CITL), has not answered the complaint. Another defendant, Timothy Gurney, is asserting a lack of personal jurisdiction. Resolution of these issues will be left to the bankruptcy court upon remand.

court. Alexander Grass filed a similar motion. These two motions are now before me.

II.

Defendants' request to have this proceeding withdrawn from the bankruptcy court turns on their right to a jury trial. See U.S. CONST. amend. VII. If this case deserves a jury trial, then it must be conducted by the district court. See Official Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place), 13 F.3d 122, 128 (4th Cir. 1993). All parties agree the Seventh Amendment right to a jury trial must be assessed under the test explained and applied in Granfinanciera v. Nordberg, 492 U.S. 33, 42 (1989). First, I must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of courts of law and equity." Id. Second, I "examine the remedy sought and determine whether it is legal or equitable in nature." Id. This second stage of analysis is more important than the first. See id. If these two considerations indicate a party is entitled to a jury trial, I must then "decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." Id. Even if Congress has assigned the case to a non-Article III adjudicative body, a jury trial will be required if Congress has done so impermissibly.

A.

Much of the work under the first part of the tripartite test was done by the Granfinanciera court itself. In Granfinanciera, a creditor who had not filed a proof of claim against the estate was being sued by the trustee for recovery of a preferential or fraudulent conveyance, and the creditor demanded a jury trial. See Granfinanciera, 492 U.S. at 36-37. The Court held that a trustee "would have had to bring his action to recover an alleged fraudulent conveyance of a

determinate sum of money at law in 18th-century England, and that a court of equity would not have adjudicated it." Id. at 46-47.

Plaintiff maintains, however, that a fraudulent conveyance (for a determinate sum of money) has not been alleged. He claims his suit is based on a cause of action that arises from the debtors' obligations under the Bankruptcy Code and that this cause of action has no analogue in 18th-century England. This contention, however, is not helpful to the analysis. The cause of action at issue must be *compared* to actions in 18th-century England; it need not be identical to one of them. The cause of action to which this action is most comparable is an action to avoid a fraudulent conveyance.

Because the action is not in fact an action to avoid a fraudulent conveyance, the required inquiry is admittedly a more difficult one. The variation in form, however, does not justify a contrary conclusion to the question of how an 18th-century English plaintiff would have brought the case. Other than detailing a few categories of claims into which this action does not fall and perhaps calling into question the validity of the distinction now drawn between the courts of law and equity in 18th-century England,[2] plaintiff does little to convince me this case would not have been tried in law at that time. Plaintiff has failed to produce a single case from that time period to support any contention this one would have been tried in equity. While I understand the difficulty of poring through reporters from hundreds of years ago in an attempt to find a case to distinguish the holding of Granfinanciera, I nonetheless must conclude the instant action would have been tried at law in 18th-century England.

---

[2] See Marcia S. Krieger, "The Bankruptcy Court is a Court of Equity": What Does That Mean?, 50 S.C. L. Rev. 275, 282-84 (1999).

4

B.

Greater emphasis is placed, however, on the second phase of the analysis. See Granfinanciera, 492 U.S. at 42. At this stage, the inquiry is whether the relief being sought is legal or equitable in nature. See id. Because the relief being sought in each count is different, the nature of the relief being sought in each individual count must be examined. A single claim requiring a jury would call for withdrawal of the case from the bankruptcy court unless Congress had permissibly placed the resolution of that claim in a non-Article III adjudicative body that does not use a jury. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472-73 (1962).

Count I presents the most difficult determination, partly because it is the count upon which all the other counts hinge. Defendants argue that Count I of the complaint is artfully pled to avoid the conclusion it calls for a legal remedy. On its face, the complaint asks only for a declaration that "all of the Trust assets constitute property of the Weeses' bankruptcy estates." (Compl. ¶ 54.) Plaintiff claims the Weeses' attempted transfer of the assets to the Trust was ineffective as a matter of law because a self-settled trust is void against creditors. In declaring the transfer ineffective, plaintiff's argument goes, the court need simply determine the current contents of the estate (which would then be subject to the turnover obligations of 11 U.S.C. § 542). See 11 U.S.C. §§ 541-42.

The defendants maintain that whatever label is placed on this count, its resolution in plaintiff's favor depends on a determination that a fraudulent conveyance has taken place. This view is incorrect. Defendants' argument has a surface appeal because, as previously stated, the common law claim to which this cause of action is most analogous is a fraudulent conveyance claim. The Weeses had the assets prior to the initiation of bankruptcy proceedings and divested

5

themselves of the assets in an apparent attempt to place them beyond the reach of their creditors. Plaintiff, however, is not attempting to prove the Weeses committed fraud. At least in this lawsuit, plaintiff is actually alleging that the Weeses *failed* in their attempt to fraudulently convey the assets.³ Plaintiff's request for declaratory relief does not rely upon the finding of a fraudulent conveyance.

Instead, plaintiff's prayer for declaratory relief in the first count depends upon whether an effective transfer of the funds ever took place. This will require the application of complex choice-of-law rules and a determination as to whether a self-settled trust can be maintained in these circumstances under the applicable law. See, e.g., Dzikowski v. Edmonds (In re Cameron), 223 B.R. 20, 24-25 (Bankr. S.D. Fla. 1998) (examining validity of a self-settled trust against debtor's creditors); Marine Midland Bank v. Portnoy (In re Portnoy), 201 B.R. 685 (Bankrupt. S.D.N.Y. 1996) (engaging in a lengthy analysis of the choice of law rules to determine whether the debtor retained control of assets allegedly transferred to a self-settled trust). Regardless of whether the case was tried before a jury, such determinations would be made by the court.⁴

If the Trust is self-settled and void under the applicable law, then the transfer would be ineffective and this action could be resolved with little need for a finder of fact. Sattin v. Brooks (In re Brooks), 217 B.R. 98, 103 (Bankr. D. Conn. 1998) (determining on summary judgment

---

³ A suit, filed by creditor Bank of America, alleging a fraudulent conveyance, is pending in the Circuit Court for Baltimore County, Maryland. Another proceeding, to determine whether the transfers to the Trust are avoidable, is taking place in the High Court of the Cook Islands.

⁴ While examination of the cases cited in this section implicitly endorse the jurisdiction of a bankruptcy court over claims regarding the validity of a self-settled trust, none of them directly address a litigant's request for a jury trial on the issue. See, e.g., In re Portnoy, 201 B.R. at 688 n.1 (noting the initial challenge to the court's jurisdiction had apparently been withdrawn).

that trusts were self-settled); Cameron, 223 B.R. at 25 (determining on summary judgment that trust was self-settled and subject to turnover obligation). Most of the Weeses' alleged activities in creating and maintaining the Trust are not in dispute. No determination as to the Weeses' intent needs to be made if fraud is not alleged, and it is difficult to ascertain what purpose the jury would serve in adjudicating this claim. See Cameron, 223 B.R. at 24 ("This principle [regarding the validity of self-settled trusts] applies without regard to whether there has been any fraud or other wrongdoing by the debtor, as settlor of the trust."). The transfers to the Trust were either valid or void against the creditors. A bankruptcy court, acting pursuant to its equity jurisdiction and applying the requisite expertise, is better suited to resolve this question. See Portnoy, 201 B.R. at 701 (noting "[e]quity would not countenance" the practice attempted by the debtor). The declaratory relief being sought in Count I is equitable in nature.

Count II, requiring the turnover of the assets of the estate, is also fairly characterized as an equitable claim. Plaintiff maintains that compliance with the turnover provisions of the Bankruptcy Code is clearly an equitable remedy and that several courts have so held in analogous cases involving postpetition turnover actions. See, e.g., In re Warmus, 252 B.R. 584 (Bankr. S.D. Fla. 2000). Defendants argue the turnover orders requested by plaintiff are different because they are aimed at recovering monies transferred pre-petition, and that § 549 claims are designed to protect the bankruptcy estate only following its inception. While it is true § 549 addresses postpetition transactions, the timing of the transaction giving rise to the turnover obligation does not affect the equitable nature of that obligation. Commanding turnover is at the very root of the bankruptcy court's equitable powers. See 11 U.S.C. § 542. If it has been established that certain assets are a part of the bankruptcy estate, there must be some mechanism

7

for acquiring control of them. Requiring turnover is merely the bankruptcy court's means of enforcing its decisions, and it is therefore equitable in nature.[5]

Counts III and IV, both attempting to restore Elizabeth G. Weese as "Protector" of the Trust, also seek a remedy that is equitable in nature. Walker asserts that Weese's position as Protector was fraudulently conveyed in order to shield the assets of the Trust from the creditors. While admitting that adjudication of a fraudulent conveyance involving money requires a determination at law, plaintiff asserts that this particular fraudulent conveyance action involves an intangible right. Plaintiff correctly points out that a fiduciary position such as Protector of the Trust, unlike the assets in the Trust, is an intangible right with no intrinsic value. Cf. Comm. of Unsecured Creditors v. 90th Street Garage Corp. (In re Term Industries, Inc.), 181 B.R. 31, 33 (Bankr. S.D.N.Y. 1995) (holding stocks to be intangibles). The resolution of a claim involving an intangible right, such as one's position as the Protector of a trust or as the trustee of a trust, can be adjudicated within the equitable powers of a court. See Official Dalkon Shield Claimants' Comm. v. Mabey (In re A.H. Robins Co.), 880 F.2d 769, 776 (4th Cir. 1989); Sunset Beach v. Stocks (In re Stocks), 137 B.R. 516, 521-22 (Bankr. N.D. Fla. 1991). Because the fifth Count merely requires Elizabeth Weese to fulfill her turnover obligation (which I have already determined to be an equitable remedy), Counts III through V all call for equitable relief.

Similarly, Counts VI and VII, directed at Alexander Grass, call for equitable forms of relief. In the allegations against Grass, there is no accusation that his position as co-trustee of the trust (along with CITL) was fraudulently conveyed. The complaint simply alleges that his

---

[5] The reasoning of this paragraph with respect to the remedy of turnover applies to Counts V and VII as well.

removal as trustee was ineffective as a matter of law because the factual predicate for his removal did not exist at the time of his removal. (See Compl. at ¶ 74.) As discussed above, the appointment or removal of trustees is a remedy often utilized by courts of equity to resolve problems properly before them. See A.H. Robins Co., 880 F.2d at 776; Stocks, 137 B.R. at 521-22. Plaintiff is seeking equitable forms of relief by asking for the restoration of Grass as a trustee of the Trust and then requiring him to turn over, in his capacity as trustee, the assets of the Trust. Of course, the court will only have the power to require the turnover of these assets if they are first determined to be part of the Weeses' bankruptcy estates. However, the forms of relief requested with respect to defendant Grass in Counts VI and VII are equitable in nature and do not require a jury trial.

C.

Resolution of the claims detailed in plaintiff's complaint does not give rise to a jury trial right.[6] While the action at issue can be analogized to one that would have been tried at law in 18th-century England, all of the relief sought in the complaint is equitable in nature. Because the emphasis in the Granfinanciera analysis is placed on the second inquiry, the scale is tipped toward finding this to be an action in equity without a right to a jury trial. As such, there is no need to reach the third part of the analysis. See Granfinanciera, 492 U.S. at 42 (requiring further

---

[6] To allay defendants' concerns regarding plaintiff's alleged attempts to circumvent their jury trial rights by pleading one set of claims and implicitly trying another set of claims at trial, I want to make it clear that the trial conducted by the bankruptcy court must be based on the pleadings. The pivotal determinations will be regarding the self-settled nature of the Trust, the law to be applied to the alleged transfers, and the validity of the Trust under the applicable law. The trial cannot be a veiled attempt to obtain a verdict as to an alleged fraudulent conveyance of the assets. The only allegation of a fraudulent conveyance in the complaint involves the conveyance of an intangible property right (the Protectorship) in Counts III and IV.

consideration only "[i]f, on balance, these two factors indicate that a party is entitled to a jury").[7]

I will therefore deny defendants' motions for withdrawal of the reference to the bankruptcy court.

A separate order is being entered herewith.

Date: _Nov 19, 2002_                    _/s/ J. Frederick Motz_
                                         J. Frederick Motz
                                         United States District Judge

---

[7] Plaintiff's argument regarding waiver of the jury trial right by submission to the jurisdiction of the bankruptcy court through the filing of voluntary petitions would be addressed in the third phase of the analysis. Because the motions are resolved on other grounds, I will not address this argument.